Gregory D. Miller
Timothy P. Gonzalez
**RIVKIN RADLER LLP**
25 Main Street
Court Plaza North, Suite 501
Hackensack, New Jersey 07601
Telephone: (201) 287-2460
Facsimile: (201) 489-0495
Gregory.Miller@rivkin.com
Timothy.Gonzalez@rivkin.com

Josh A. Krevitt (admitted *pro hac vice*)
Charlotte Jacobsen (admitted *pro hac vice*)
Paul E. Torchia (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
JKrevitt@gibsondunn.com
CJacobsen@gibsondunn.com
PTorchia@gibsondunn.com

*Attorneys for Defendants Sun Pharmaceutical Industries Ltd. and Sun Pharmaceutical Industries, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INCYTE CORPORATION AND INCYTE HOLDINGS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>SUN PHARMACEUTICAL INDUSTRIES LTD. AND SUN PHARMACEUTICAL INDUSTRIES, INC.,<br><br>Defendants. | C.A. No.: 2:24-cv-06944-JXN-JBC |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR THE RECUSAL OF THE HONORABLE JULIEN X. NEALS**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The Law Compels Recusal .......... 2

B. The Objectively Ascertainable Facts Compel Recusal .......... 7

C. Incyte's Unsworn, Evasive, and Incomplete Denials Fail to Dispel the Objective Appearance of Partiality .......... 9

III. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amicus Inc. v. PPT Inc.*,
10 U.S.P.Q.2d 2039 (W.D. La. 1989) ... 7

*Anderson v. Bd. of Sch. Dirs.*,
Civ. No. 07-111, 2011 WL 5325782 (W.D. Pa. Nov. 3, 2011) ... 3

*In re Asbestos Sch. Litig.*,
No. 83-0268, 1989 WL 19395 (E.D. Pa. Mar. 1, 1989) ... 6

*Comparato v. Schait*,
848 A.2d 770 (N.J. 2004) ... 6

*Doe v. Cabrera*,
134 F. Supp. 3d 439 (D.D.C. 2015) ... 4

*Fredonia Broad. Corp. v. RCA Corp.*,
569 F.2d 251 (5th Cir. 1978) ... 3, 6, 9

*Fresenius USA, Inc. v. Baxter Int'l Inc.*,
107 F. App'x 910 (Fed. Cir. 2004) ... 8, 9

*Hall v. Small Bus. Admin.*,
695 F.2d 175 (5th Cir. 1983) ... 3, 4, 6, 7

*In re Kensington Int'l Ltd.*,
368 F.3d 289 (3d Cir. 2004) ... 7

*Keyhani v. Chance*,
Civ. No. 86-7520, 1988 WL 109100 (E.D. Pa. Oct. 17, 1988) ... 6

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988) ... 7

*Mathis v. Huff & Puff Trucking, Inc.*,
787 F.3d 1297 (10th Cir. 2015) ... 3

*McCulloch v. Hartford Life & Accident Ins. Co.*,
Civ. No. 01-1115, 2005 WL 3144656 (D. Conn. Nov. 23, 2005) ... 3, 4

*Parker v. Connors Steel Co.*,
855 F.2d 1510 (11th Cir. 1988) ... 7, 9

*United States v. DeTemple*,
162 F.3d 279 (4th Cir. 1998) ... 7

*United States v. Martinez*,
446 F.3d 878 (8th Cir. 2006) ... 4

**Other Authorities**

Federal Judicial Center, *Law Clerk Handbook* 1 (4th Ed. 2020)....................................................10

**TABLE OF ABBREVIATIONS**

| ABBREVIATION | DESCRIPTION |
|---|---|
| Incyte | Incyte Corporation and Incyte Holdings Corporation |
| Mot. | Defendant's Memorandum of Law in Support of Defendant's Motion for the Recusal of the Honorable Julien X. Neals, U.S.D.J. (D.I. 184-1) |
| Opp. | Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for the Recusal of the Honorable Julien X. Neals, U.S.D.J. (D.I. 196) |
| Sun | Sun Pharmaceutical Industries, Inc. and Sun Pharmaceutical Industries Ltd. |

## I. INTRODUCTION

Sun, in its motion to recuse, presented a textbook case of an appearance of partiality that mandates recusal. Sun showed that the former law clerk of the Court in attendance at the only substantive hearing on Incyte's preliminary injunction motion already had accepted an offer of employment from the very Incyte lawyers who were arguing before him. Sun also showed that those same Incyte lawyers staffed him on this case only weeks later, even though the applicable ethical norms mandated that he be screened. He was not screened, for nearly two months, and then only because Sun discovered the conflict itself. During this critical time when the former clerk was not screened, Incyte continued to file substantive papers that the Court considered in deciding Incyte's motion. And incredibly, Incyte disclosed none of this to Sun—not at the hearing, not upon deciding to staff the former clerk on the case, and not before the Court entered its order on the preliminary injunction. Incyte, in its opposition, disputes none of these facts, and never justifies its failure to disclose them. On their face, they establish a clear objective appearance of partiality to the outside observer, which under the law is all that counts.

Incyte devotes the entirety of its brief to a failed effort to suggest that despite the alarming outward appearance of impropriety, underlying facts, known only to Incyte, show that there is nothing to see here. Incyte, in a brief unsupported by a single sworn declaration, sets forth an evasive, incomplete, and internally inconsistent narrative of what went on behind the scenes. Incyte attempts to diminish the importance of every salient fact, from the role of the former clerk while employed at the Court, to the significance of the preliminary injunction conference, to the materiality of the briefing Incyte submitted during the time the former clerk was not screened by Incyte's lawyers. All of these arguments are indefensible. The former clerk held a prominent position at the hearing sitting next to Your Honor. It was not a mere "ministerial" status conference, but the only substantive hearing held on the preliminary injunction motion. And the

briefing that the parties subsequently submitted was important enough to be cited by the Court in its order.

Incyte's opposition is also notable for what it does not say. Incyte still does not provide answers to the specific questions regarding the role of the former clerk that Sun repeatedly asked prior to filing this motion. Tellingly, nowhere does Incyte say that the former clerk was not privy to the Court's thoughts about the case, or that he did not discuss them with Incyte's lawyers while he was not screened. Sun, of course, has no way to test Incyte's selective assertions about what happened behind the scenes. That is exactly why the standard for recusal is objective, and why recusal is mandated here.

Finally, in a transparent effort to shift responsibility for this debacle away from itself, Incyte accuses Sun of impugning the integrity of this Court and Your Honor's former clerk. Sun did no such thing. Sun took pains in its brief to make it clear that Incyte and Incyte's lawyers created this problem. They have taken no responsibility for it. Instead, Incyte now urges this Court—who Sun expects had no idea about these unusual circumstances until Sun filed its motion—to effectively approve of Incyte's questionable conduct and sign onto it after the fact. But this Court need not do that. The Court can grant this motion without finding that its former clerk behaved improperly, and without prejudicing the continued litigation of the case, which is still at an early stage.

## II. ARGUMENT

### A. The Law Compels Recusal

Sun, in its motion, showed that courts routinely recuse themselves in cases involving conflicts far less serious than this one. Mot. at 12. Indeed, some courts have held that a law clerk's continued work as law clerk of the court on a case after accepting an offer of employment from a firm representing one of the parties is *alone* sufficient to justify recusal, i.e., even in situations

where that clerk was timely screened upon joining that firm. *Id.* (citing, *e.g.*, *Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983)). In other cases, courts have held that failure to timely screen a former clerk *alone* justified recusal, i.e., even where the clerk had not, while previously a clerk of the court, accepted an offer of employment from a firm involved in a case and continued to work on it as the court's law clerk. *Id.* (citing, *e.g.*, *Fredonia Broad. Corp. v. RCA Corp.*, 569 F.2d 251, 255 (5th Cir. 1978)).

Here, Incyte's lawyers' conduct ran afoul of *both* norms. Incyte cites numerous cases in a failed effort to suggest that courts encountering these circumstances have declined to recuse themselves. Opp at 12-16. That is not correct. None of Incyte's cases involve a situation, like this one, where a law clerk *both* continued to work as the law clerk of the court on a case after accepting an offer of employment from one of the parties' law firms, *and* then later was not only not screened from that case but joined the litigation team for the case. As far as Sun is aware, no federal judge has ever permitted that in any reported case, under any circumstance—regardless of how insubstantial the involvement of the clerk on the case while the case was before the court and regardless of how little work the clerk did on the case at the new firm.

Moreover, although the courts in Incyte's cases may have denied requests to recuse—in light of the far less serious conflicts they addressed—the underlying analysis of the courts in those cases entirely supports Sun's motion. Several cases cited by Incyte involve clerks who were only tangentially connected to an interested firm, and thus they had no conflict of interest at all. *See Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1304-05, 1313 (10th Cir. 2015) (clerk's husband hired merely to observe public trial by third party); *Anderson v. Bd. of Sch. Dirs.*, Civ. No. 07-111, 2011 WL 5325782, at *1, 4 (W.D. Pa. Nov. 3, 2011) (clerk's brother's firm's client dismissed before clerkship began); *McCulloch v. Hartford Life & Accident Ins. Co.*, Civ. No. 01-

1115, 2005 WL 3144656, at *2 (D. Conn. Nov. 23, 2005) (clerk's future firm represented party in unrelated matter). Sun agrees these types of attenuated connections between a clerk and an interested firm usually do not create an appearance of partiality, but they are not relevant to this case, where the conflict is undeniable. *See McCulloch*, 2005 WL 3144656, at *5-6 ("[I]t is universally accepted that the court must be disqualified where its law clerk continued to participate in a case in which his future employer represented one of the parties. . . . But it is equally well settled that disqualification is not required where the court's or the law clerk's alleged disqualifying relationship with a party or a law firm is unrelated to the case in which disqualification is sought.").

Incyte cites two other cases involving different types of potential conflicts than the one at issue here. Although these cases involved a sufficiently concrete connection to create a conflict, recusal was not required because the clerk was screened and because the objectively ascertainable facts dispelled any appearance of partiality. *See United States v. Martinez*, 446 F.3d 878, 883 (8th Cir. 2006) (clerk was involved in case as an attorney eighteen months before participating in hearing as a courtroom deputy but was totally screened from participation as a clerk); *Doe v. Cabrera*, 134 F. Supp. 3d 439, 443, 450 (D.D.C. 2015) (clerk's father's firm represented party but clerk's appearance at hearing did not create appearance of partiality because (1) the clerk was screened, (2) a different clerk was acting as the clerk of the court at the hearing, and (3) the discovery motion was decided orally without input from clerks). Thus, in *Martinez* the clerk was a mere "errand-runner," and in *Cabrera* the clerk could not have been a "sounding board." *See Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983) (recognizing that generally "[l]aw clerks are not merely the judge's errand runners. They are sounding boards for tentative opinions . . . ."). Here, however, Incyte does not allege the former law clerk was screened while

employed at the Court, and the objective facts of his notetaking and prominent position as the sole clerk of the Court only reinforce the presumption that the former law clerk was serving his usual substantive role.

The two cases Incyte cites partially involving the relevant fact pattern here—a clerk participating as the law clerk of the court in a case involving his future employer—directly contradict Incyte's position. In *Hunt v. American Bank & Trust Co.*, recusal was not required because the judge "removed the file from the clerk once the clerk had accepted a job with the defendants' firm." 783 F.2d 1011, 1016 (11th Cir. 1986). Thus, although the clerk previously had ministerial involvement with the case, the moment the offer was accepted and the conflict arose, the clerk did not further participate *at all*. The Eleventh Circuit explained: "a reasonable person might wonder about a law clerk's impartiality in cases in which his future employer is serving as counsel. Clerks should not work on such cases." *Id.* at 1015 (holding recusal not required "so long as the clerk refrains from participating in cases involving the firm in question"). Here, unlike in *Hunt*, the undisputed facts show the clerk did not "refrain from participating," he was not "removed" from the case, and his participation, even if limited to attendance at the preliminary injunction conference, occurred after he accepted an offer of employment from Incyte's counsel.

Incyte further cites *Amezquita v. Beneficial Texas, Inc.* in an attempt to argue that recusal is not required because the clerk's involvement was not "personal and substantial." Civ. No. 02-77, 2005 U.S. Dist. LEXIS 56008 (S.D. Tex. Nov. 3, 2005). *Amezquita* shows the opposite. In that case, the day before trial, the judge recused himself *sua sponte* because his clerk had worked on the case after accepting an offer from an involved firm. *Id.* at *3. The judge recused himself even though the clerk's prior involvement was "ministerial" not "personal and substantial" and even though the clerk had not yet even started at the firm. *Id.* at *10 n.12. Under Incyte's

reasoning, not only was the judge wrong to recuse himself, but it would also have been fine if the former clerk jumped back on the case once he started at the firm. This is plainly inconsistent with the requirements of Section 455. 28 U.S.C. § 455; *Amezquita,* 2005 U.S. Dist. LEXIS 56008, at *3; *Hunt*, 783 F.2d at 1015 ("Clerks should not work on such cases . . . ."); *In re Asbestos Sch. Litig.*, No. 83-0268, 1989 WL 19395, at *2 (E.D. Pa. Mar. 1, 1989) (recusing because judge would be unable to keep clerk "totally isolated" from the case).

The cases Incyte cites to justify its decision to staff the former law clerk on the case, despite his prior involvement as a law clerk of the Court, are also inapt. Both cases involved clerks whose participation during their clerkship was at a different stage of the litigation, and the objectively ascertainable facts thus showed they possessed no confidential information that could possibly create an unfair advantage. *See Comparato v. Schait*, 848 A.2d 770, 772-73, 775 (N.J. 2004) (4-2 decision) (clerkship ended two years prior to later participation as attorney and "the gist of the litigation [during the clerkship] was procedural as opposed to substantive in nature," so the clerk "was not privy to any confidential information regarding" the case); *Keyhani v. Chance*, Civ. No. 86-7520, 1988 WL 109100, at *2-3 (E.D. Pa. Oct. 17, 1988) (clerk only attended scheduling conference that "addressed no substantive issues" and thus there was no "appearance of a conflict"). Here, on the other hand, the former law clerk began working at the firm, unscreened, weeks after his work on the case as the law clerk of the Court, while substantive briefing was ongoing regarding a critical preliminary injunction motion argued during his clerkship at a hearing that he attended as the clerk of the Court. Incyte had him send Sun adverse correspondence, mere weeks after his clerkship ended. *See* Mot. at 16. Recusal is consequently required due to Incyte's failure to screen. *See Fredonia Broad. Corp. v. RCA Corp.*, 569 F.2d 251, 255 (5th Cir. 1978) ("Once it appeared that Fredonia might have an unfair advantage in the litigation because its

counsel included a lawyer who had been exposed to the trial judge's innermost thoughts about the case, the trial judge had no alternative to disqualifying himself."); *Amicus Inc. v. PPT Inc.*, 10 U.S.P.Q.2d 2039, 2039 (W.D. La. 1989) (recusing because the former clerk's "familiarity with the previous suit and with the undersigned's thoughts put[] plaintiff in an unjustifiably disadvantaged position").

In sum, the law uniformly compels recusal. Incyte, does not, because it cannot, cite a single case where any court declined to recuse itself under circumstances like those at issue here.

**B. The Objectively Ascertainable Facts Compel Recusal**

Recusal is required whenever the totality of circumstances create an appearance of partiality in the eyes of the reasonable layperson. *In re Kensington Int'l Ltd.*, 368 F.3d 289, 303 (3d Cir. 2004) (noting "judicial insiders, 'accustomed to the process of dispassionate decision making . . . may regard asserted conflicts to be more innocuous than an outsider would.'" (quoting *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998))). Importantly, only facts that are "objectively ascertainable" are relevant—thus neither activity hidden behind closed doors nor the actual virtue of the parties are considered. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988); *see also Parker v. Connors Steel Co.*, 855 F.2d 1510, 1526 n.17 (11th Cir. 1988) ("[F]actors that tend to lessen the appearance of impartiality must likewise be objectively ascertainable."). Here, the arguments Incyte advances to try to minimize the law clerk's involvement during and after the clerkship are not only unascertainable but are inconsistent with the undisputed, objectively ascertainable facts.

Incyte argues that the law clerk's only involvement with the case as a clerk was as an "observer" at the preliminary injunction conference, despite his notetaking and despite his prominent position sitting next to Your Honor as the Court's sole law clerk. But even if Incyte's account were true, it is not objectively ascertainable that those notes would only be for his own

personal use rather than to assist the Court in deciding the motion. *See Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983) (noting "objectively ascertainable" standard does not "extend to what happens in the judge's chambers"). Notably, Incyte does not contend that any other law clerk of the Court was present at the conference or assigned to the case at the time of the conference.

Incyte further attempts to minimize the substantive nature of the proceedings occurring at the time the former clerk switched from clerk of the Court to lawyer for Incyte, misleadingly stating that "the substantive motions in the case had been briefed" and its temporary restraining order ("TRO") motion was moot. Opp. at 15. In fact, Incyte's TRO reply was effectively supplemental briefing advancing substantive arguments in support of the preliminary injunction motion. TRO Reply (D.I. 104). Indeed, that briefing and the accompanying declarations were cited repeatedly in the Court's Order. P.I. Order (D.I. 135) at 16-17, 27-29, 31, 35, 50; *see also id.* at 29, 33 (citing Carson TRO Reply Decl. (D.I. 104-1)). Incyte's unsworn statement that the clerk did not have "any role" in preparing these papers is not objectively ascertainable to Sun or the reasonable layperson. The lack of a timely screen instead creates the appearance that information may have been shared. *Cf. Fresenius USA, Inc. v. Baxter Int'l Inc.*, 107 F. App'x 910, 912 (Fed. Cir. 2004) ("The timing of [plaintiff's] implementation of the screen does not foreclose the possibility that . . . confidential information had been exchanged, either directly or indirectly, between [plaintiff's] attorneys before the wall was erected." (quotation omitted)).

Later, the law clerk sent an adverse email to Sun on behalf of Incyte and was included on another email between Sun and Incyte on a different issue. These communications created the objective appearance that the former clerk had joined Incyte's litigation team and that he was free to share his views on the case openly. *See* Mot. at 6. Incyte contends that his actual participation was less than the emails imply. But the specific internal communication protocols and staffing

dynamics of Incyte's litigation team are not objectively ascertainable to Sun or the reasonable layperson and thus cannot be used to dispel the appearance of impropriety. *See Parker*, 855 F.2d at 1526 n.17.

Finally, Incyte's assertion that its untimely screen, put in place two months too late, somehow cures this problem (Opp. at 14-15) is entirely wrong. As an initial matter, even a timely screen would have done nothing to address the objective appearance of partiality that arose from the former clerk's attendance at the preliminary injunction conference while holding an accepted offer of employment from the Incyte lawyers in the courtroom. *Fredonia*, 569 F.2d at 256 ("When, as here, a judge is confronted with a situation where the appearance of impropriety is already established, a taint on the judicial system remains as long as he presides over the case"). And an untimely screen cannot, of course, undo any unfair advantage that Incyte and its lawyers may have gained by learning the innermost thoughts of the Court before the screen was put in place. *E.g.*, *Fresenius USA*, 107 F. App'x at 912.

### C. Incyte's Unsworn, Evasive, and Incomplete Denials Fail to Dispel the Objective Appearance of Partiality

Even if Incyte's assertions about the purportedly limited behind-the-scenes role of the former law clerk were relevant—and they are not—the Court should give them no weight because they are unsworn, evasive, and incomplete. Indeed, Sun, in its motion, prominently criticized Incyte for repeatedly refusing, during the parties' extensive correspondence prior to the filing of this motion, to answer basic questions regarding the role of former law clerk. Mot. at 2. Incredibly, Incyte *still* does not address those questions in its opposition, but merely points back to and parrots Incyte's prior evasive, unsworn correspondence. Incyte's assertions continue to raise more questions than they answer.

For example, Sun repeatedly asked Incyte to state whether the former clerk was staffed as the law clerk of the Court on this case. Mot. at 2. Incyte did not answer. *Id*. Incyte still does not answer this question in its opposition. Sun also asked Incyte to say whether the former law clerk was involved in transitioning the case to the current law clerk. *Id*. Again, Incyte did not answer. *Id*. And again, Incyte still does not answer this question in its opposition. Incyte, merely repeats its opaque assertion that the clerk was not "personally and substantially" involved, but without explaining how that is possible given his apparent assignment to the case and prominent place at the hearing. Incyte's assertions that the law clerk was a mere "observer" at the hearing are equally meaningless, as the role of law clerks at substantive proceedings is most often limited to observation: they do not typically question counsel or rule on motions. Finally, Incyte also does not address whether this law clerk was privy to the Court's or current law clerk's views on this matter, by, for example, discussing or observing discussions in chambers. *See* Federal Judicial Center, *Law Clerk Handbook* 1 (4th Ed. 2020) ("Many judges discuss pending cases with their law clerks and confer with them about decisions.").

Incyte's assertions regarding the role of the former law clerk at Gibbons are even more abstruse and dubious. Incyte asserts that the law clerk was brought into the case solely to assist with a sealing matter over Thanksgiving weekend. Opp. at 4-5. But that assertion is flatly inconsistent with the fact that the clerk was previously copied on an entirely different team email serving a set of discovery requests on Sun. That email had nothing to do with the motion to seal. All indications are that the clerk was staffed as a team member on the case. Incyte has no other explanation for why he would have been copied on this prior team email.

Moreover, Incyte never says, anywhere in its 22-page opposition, that the former law clerk did not share his thoughts—or this Court's views—with his colleagues at the Gibbons firm at any

point between when he was hired on October 7, 2024, and when he was first screened nearly two months later. Instead, Incyte merely asserts: "The former law clerk did not file a notice of appearance in the case, and he did not communicate with anyone from the United States District Court for the District of New Jersey generally or from Judge Neals' chambers specifically about the case." Opp. at 5. That assertion conspicuously avoids saying anything about what the former law clerk may have conveyed to his new colleagues internally. Clearly, if the former law clerk was involved enough in the case to be redacting substantive papers, he was involved enough to discuss his views on the case with his colleagues.

Finally, Incyte has utterly failed to explain why it never disclosed to Sun—at any point—the potential conflict with this law clerk. Sun has repeatedly challenged Incyte to explain this conduct, and Incyte continues to evade providing any response. As Sun explained in its motion, Incyte previously tried to deflect Sun's question on that issue by asserting—dubiously—that none of Incyte's lawyers at the September 16, 2024, preliminary injunction conference had any idea that the law clerk of the Court sitting before them, next to Your Honor, was holding an accepted offer of employment from the Gibbons firm, and that he would start his job in just a few weeks. Mot. at 17-18. But as Sun explained, that excuse, even if accepted, does not explain why Incyte did not *later* promptly disclose this conflict upon the former law clerk commencing his employment on October 7, 2024, prior to the Court's ruling on the preliminary injunction motion. Indeed, as Sun explained, the very Gibbons lawyer who signed Incyte's opposition to this motion met with the former law clerk in his first week at the firm, certainly learned of the conflict then, and yet still never disclosed it. *Id.* Incyte's silence on this issue is troubling.

## III. CONCLUSION

This is a serious motion. Sun, a litigant often before this Court, did not file it lightly. Incyte, in its cavalier response, has not provided a single sworn declaration upon which the Court

could reasonably rely to deny it. Instead, Incyte asks the Court to put itself out on a limb, and to bless a violation of norms that no court has ever excused, and with no support beyond the unsworn assurances of the very Incyte lawyers who made the astonishing decision to staff the former law clerk on this case. Sun respectfully requests that the Court decline that invitation and grant this motion.

Dated: February 3, 2025

By: *s/ Gregory D. Miller*

Gregory D. Miller
Timothy P. Gonzalez
RIVKIN RADLER LLP
25 Main Street
Court Plaza North, Suite 501
Hackensack, New Jersey 07601
Telephone: (201) 287-2460
Facsimile: (201) 489-0495
Gregory.Miller@rivkin.com
Timothy.Gonzalez@rivkin.com

Josh A. Krevitt (admitted *pro hac vice*)
Charlotte Jacobsen (admitted *pro hac vice*)
Paul E. Torchia (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
JKrevitt@gibsondunn.com
CJacobsen@gibsondunn.com
PTorchia@gibsondunn.com

*Attorneys for Defendants Sun Pharmaceutical Industries Ltd. and Sun Pharmaceutical Industries, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document is being served via email on all counsel of record on February 3, 2025.

*s/ Gregory D. Miller*
Gregory D. Miller