UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INCYTE CORPORATION and INCYTE HOLDINGS CORPORATION,<br><br>Plaintiff,<br>v.<br><br>SUN PHARMACEUTICAL INDUSTRIES LTD. and SUN PHARMACEUTICAL INDUSTRIES, INC.,<br><br>Defendants. | Civil Action No. 24-06944 (JXN) (JBC)<br><br>OPINION |

**NEALS, District Judge:**

This matter comes before the Court on Defendants Sun Pharmaceutical Industries Ltd., and Sun Pharmaceutical Industries, Inc.'s ("Defendants" or "Sun") motion for recusal (ECF No. 184); and Plaintiff, Incyte Corporation and Incyte Holdings Corporation's ("Incyte") opposition thereto (ECF No. 196). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202. Venue is proper pursuant to §§ 1391 and 1400(b). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' motion is **GRANTED**.

### I. BACKGROUND AND PROCEDURAL HISTORY

Sun filed the instant recusal motion based on employment of the Court's former law clerk with the firm representing Incyte.[1] The relevant facts follow.

---

[1] Incyte is represented by Gibbons P.C. ("Gibbons") as local counsel.

On June 11, 2024, Incyte, filed a declaratory judgment patent infringement action against Sun, which sought to enjoin Sun from launching Leqselvi, a drug to treat alopecia areata, because it allegedly infringed on Incyte's U.S. Patent No. 9,662,335 ("the '335 patent"). (ECF No. 1).[2]

This matter was initially assigned to the Honorable Ester Salas, U.S.D.J. ("Judge Salas"). On July 2, 2024, Incyte filed its preliminary injunction motion. (ECF No. 30). On August 2, 2024, Sun opposed. (ECF No. 55).[3] On August 16, 2024, Incyte replied. (ECF No. 62). Also on August 16, 2024, after briefing was complete, the case was reassigned from Judge Salas to this Court. (ECF No. 66).

The following transpired while the former clerk was employed by the Court. On August 28, 2024, in response to correspondence from counsel (*see* ECF Nos. 67, 70), the Court entered a text order scheduling oral argument for September 16, 2024. (ECF No. 71). Subsequently, on September 12, 2024, the Court entered a text order converting the scheduled oral argument into a status conference and a technology tutorial given the "unique issues" presented. (ECF No. 79).

On September 16, 2024, the Court held the technology tutorial, which the Court's former law clerk observed.

On September 27, 2024, the former law clerk's term ended. (Declaration of Gregory D. Miller ("Miller Decl.") Ex. 6, ECF No. 184-8).

On October 1, 2024, Incyte filed a motion for a temporary restraining order ("TRO") to restrain Sun from launching Leqselvi. (ECF No. 91). Incyte requested an expedited briefing schedule on the TRO. (ECF No. 93).

On October 7, 2024, the Court's former law clerk began employment with Gibbons P.C. (Miller Decl., Ex. ECF No. 184-8).

---

[2] Incyte is represented by Gibbons P.C. ("Gibbons") as local counsel.
[3] Sun is represented by Rivkin Radler, LLP as local counsel.

2

On October 10 and 15, 2024, the Court's current law clerk held telephone conferences with counsel regarding Sun's anticipated October 16, 2024 launch date, (ECF No. 99 and Miller Decl., Ex. 6, ECF No. 184-8), which Sun agreed to postpone pending the Court's decision.

On November 1, 2024, the Court granted Incyte's motion for a preliminary injunction and denied Incyte's TRO motion as moot. (ECF Nos. 135, 136).

On November 4, 2024, Sun appealed the Court's November 1, 2024 Opinion and Order to the Federal Circuit. (ECF No. 137).

On November 8, 2024, the parties submitted bond proposals as ordered by the Court. (ECF Nos. 140, 141).

On November 18, 2024, the parties submitted a joint discovery plan to the Hon. James B. Clark III, U.S.M.J. ("Judge Clark"). (ECF No. 149).

On November 27, 2024, the Court's former law clerk was copied on an email sent to Sun's counsel by another Gibbons associate attaching Incyte's first set or interrogatories and requests for production. (Miller Decl., Ex. 2, ECF No. 184-4).

On December 1, 2024, the Court's former law clerk sent an e-mail to Sun's counsel attaching proposed draft redactions to earlier bond filings related to a motion to seal before Judge Clark. (ECF No. Miller Decl., Ex. 1, ECF No. 184-3).

On December 4, 2024, Sun's counsel sent a letter to Incyte's counsel requesting "prompt[] disclos[ure]" of the former law clerk's "recruitment" and "staffing on this case," and expressed concern about his participation on the joint motion to seal. (Miller Decl., Ex. 3, ECF No. 184-5).

On December 6, Gibbons responded that, in light of their concerns, the former law clerk would be screened from the case. (Miller Decl., Ex. 4, ECF No. 184-6). Gibbons further advised that, "because of staffing issues before the Thanksgiving holiday," the former law clerk had been

3

asked "to assist one of his colleagues . . . with drafting a motion to seal that w[ould] be decided by the Honorable James B. Clark, III (U.S.M.J.)," and that the former law clerk "had no other involvement." (*Id.*).

On December 10, 2024, Sun sent Incyte a reply letter inquiring further into the circumstances of the Court's former law clerk's employment with Gibbons and the nature of his involvement with the case while he was a law clerk. (Miller Decl., Ex. 5, ECF No. 184-7).

On December 13, 2024, Gibbons sent a reply letter with the details of acceptance and commencement of employment with Gibbons, reiterated that the former law clerk's involvement was limited to his work on the motion to seal before Judge Clark, and that his involvement in the case while clerking was not "personal and substantial." (Miller Decl., Ex. 6, ECF No. 184-8).

On December 17, 2024, in reply, Sun asserted that it should have been informed of the former law clerk's accepted offer of employment at Gibbons "immediately" and requested that Gibbons explain how the former law clerk was not personally and substantially involved with the case given his attendance at the technology tutorial where he "appeared to take notes." (Miller Decl., Ex. 7, ECF No. 184-9).

On December 23, 2024, Incyte responded that neither Incyte nor Finnegan, Henderson, Farabow, Garrett and Dunner LLP, Gibbons' co-counsel, knew of Gibbons' hiring or staffing of the former law clerk on the matter and that the Court's former law clerk represented his involvement was not "personal and substantial." (Miller Decl., Ex. 8, ECF No. 184-10).

On December 27, 2024, Sun filed the instant motion. ("Defs.' Br.") (ECF No. 184).[4] Incyte opposed. ("Pls.' Br.") (ECF No. 196). Sun replied. (ECF No. 200). This matter is now ripe for consideration.

---

[4] On January 3, 2025, Sun filed a corrected brief which the Court refers to as ("Defs.' Br."). (ECF No. 189).

4

## II.     LEGAL STANDARD

Federal law requires that the Court recuse itself any time circumstances arise where its "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004) (citing *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 164 (3d Cir. 1993); *see also Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("The standard for recusal is whether an objective observer reasonably might question the judge's impartiality."); *In re Prudential Ins. Co. of Am. Sales Practice Litig., Agent Actions*, 148 F.3d 283, 343 (3d Cir. 1998); *United States v. Wecht*, 484 F.3d 194, 213 (3d Cir. 2007). This objective standard is intended to promote confidence in the judiciary by avoiding the appearance of impropriety, "because 'people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges.'" *In re Sch. Asbestos Litig.*, 977 F.2d 764, 782 (3d Cir. 1992) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864-65 (1988)).

A party seeking recusal need not show actual bias on the part of the court, but rather the reasonable possibility of bias. *In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 283, 343 (3d Cir. 1998). The mere appearance of partiality is sufficient to require recusal. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 98 (3d Cir. 1992). However, "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *Smalls v. Riviera Towers Corp.*, No. 16-847, 2017 WL 68621, at *2 (D.N.J. January 6, 2017) (quoting *Laird v. Tatum*, 409 U.S. 824, 837 (1972)).

### III. DISCUSSION

Sun argues recusal is necessitated in two situations involving law clerks, both of which are implicated here: (1) if a law clerk substantively works on a case for a judge during his or her clerkship after accepting an offer of employment from counsel for one of the parties to the case, or (2) a party staffs a former law clerk on a case that the clerk substantively worked on for the judge during his or her clerkship. (Defs.' Br. at 9-11, 15-18). Additionally, Sun argues Gibbons' failure to screen the former law clerk or disclose the "conflict" further mandates recusal. (*Id.*).

Incyte counters that the Court need not recuse because a reasonable person would not question the Court's impartiality under all the facts circumstances. (Pls.' Br. at 9). Incyte asserts that the former law clerk "merely attended and observed, a single status conference and technology tutorial, just days before he left his clerkship" and that "once the former law clerk joined Gibbons P.C., he did not appear in the case before [the Court], did not communicate with anyone in [the Court's] chambers . . . and did not work on any motion returnable before [the Court.]" (*Id.* at 8). Incyte distinguishes the recusal cases relied on by Sun contending in those cases the law clerk's involvement was more substantial than the facts here, which are more akin to "ministerial" and "observational." (*Id.* at 10-13). Additionally, Incyte contends Sun's disfavor with the Court's ruling is the improper basis on which Sun seeks the Court's recusal. (*Id.* at 16).

Notwithstanding Incyte's accurate assertions as to the Court's former law clerk's limited involvement in the case,[5] the Court is mindful of and seeks to negate the potential for even the slightest appearance of impartiality that might arise. Even inadvertent participation by a law clerk on a matter in which their future employer is retained as counsel has warranted recusal. *See, e.g., Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983) (vacating judgment and remanding

---

[5] The Court notes that its former law clerk did not substantively work on or participate in researching or drafting any part of the Court's preliminary injunction opinion.

6

to new judge due to clerk's participation); *Monument Builders of Pa., Inc. v. Cath. Cemeteries Ass'n*, 190 F.R.D. 164, 167 (E.D. Pa. 1999) ("[W]e find that her shift from law clerk to advocate, on what we have already found to be the same 'matter', implicates at least the appearance of impropriety."); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1525 (11th Cir. 1988) (noting clerk's participation created appearance of partiality requiring recusal); *First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 989 (9th Cir. 2000) (describing how, although clerk was screened, screen was inadequate to avoid recusal); *In re Asbestos Sch. Litig.*, No. 83-0268, 1989 WL 19395, at *2 (E.D. Pa. Mar. 1, 1989) (recusing preemptively because judge would be unable to keep clerk "totally isolated" from the case); *Miller Indus., Inc. v. Caterpillar Tractor Co.*, 516 F. Supp. 84, 89 (S.D. Ala. 1980) (requiring recusal and noting "a law clerk should not participate in litigation in which his future employer appears as counsel"); *see also McCulloch v. Hartford Life & Accident Ins. Co.*, No. 01-1115, 2005 WL 3144656, at *5 (D. Conn. Nov. 23, 2005) ("[I]t is universally accepted that the court must be disqualified where its law clerk continued to participate in a case in which his future employer represented one of the parties.").[6]

Lastly, the Court addresses Incyte's contention that Sun's disfavor with the Court's ruling is the improper basis on which Sun seeks the Court's recusal. (Pls.' Br. at 16). The Court agrees that this would be an improper basis for recusal. *See Liteky*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis" for recusal); *Wharton v. Graterford*, 95 F.4th 113, 126 (3d Cir. 2024) ("[A] party's displeasure with legal rulings does not form an adequate basis for recusal." (quoting *Securacomm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 278

---

[6] Additionally, the Judicial Conference has stated that 28 U.S.C. § 455(a) and Canon 2 of the Code of Conduct for United States Judges provides that law clerks "should have no involvement *whatsoever* in pending matters handled by the prospective employer." Judicial Conference of the United States, Committee on Codes of Conduct, Advisory Op. No. 74 (emphasis added). The Federal Judicial Center's Clerk Ethics Handbook similarly notes that "[o]nce [clerks] have accepted an offer . . . the ethics rules take the decision out of [their] judge's hands. [Clerks] may not work on any pending or future cases involving [their] future employer." Fed. Jud. Ctr., Maintaining the Public Trust: Ethics for Federal Judicial Law Clerks 26 (Revised 4th ed. 2019).

(3d Cir. 2000))); *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1356 (3d Cir. 1990) ("Disagreement with a judge's determinations certainly cannot be equated with the showing required to so reflect on his impartiality as to dictate recusal."); *Hall v. Doering*, 185 F.R.D. 639, 643 (D. Kan. 1999) ("Recusal statutes are . . . not . . . a means of protesting court orders and procedures with which litigants disagree. Courts have repeatedly commented that the possibility for misuse of these statutes is great."); *Crider v. Keohane*, 484 F. Supp. 13, 16 (W.D. Okla. 1979) ("[A] discontented litigant who seeks to oust judges because he is displeased with the actions of those judges . . . is not the purpose of . . . [§] 455.").

The Court must endeavor to preserve public trust and confidence in the judicial system and negate the potential for even the slightest appearance of impartiality that might arise. *See Fredonia Broad. Corp. v. RCA Corp.*, 569 F.2d 251, 255 (5th Cir. 1978) ("These rules are express safeguards of the integrity of the judicial process, a concern of all courts."); *Amicus Inc. v. PPT Inc.*, 10 U.S.P.Q.2d 2039, 2039 (W.D. La. 1989) ("[O]nce it appears that a party might have an unfair advantage because that party's counsel includes a lawyer who has been exposed to the trial judge's innermost thoughts about a case, the judge has no alternative to disqualifying himself . . . The issue, no doubt, is a close one. This court, however, is guided by the principle that when there is doubt, a judge should exercise discretion in favor of recusal."); *Hall*, 695 F.2d at 178-79 ("The goal of [§ 455] is . . . the appearance of impartiality . . . A judge should exercise his discretion in favor of disqualification if he has any question about the propriety of his sitting in a particular case.") (citations omitted); *Miller*, 516 F. Supp. at 90 ("Nonetheless, this court reluctantly concludes, . . . the law clerk's continued participation in the case after he had accepted employment with Miller's law firm mandates disqualification of the trial judge to avoid the appearance of impropriety.").

Accordingly, the Court recuses.

## IV.  CONCLUSION

For the reasons set forth above, Defendants motion for this Court's recusal (ECF No. 184) is **GRANTED**. An appropriate Order accompanies this Opinion.

DATED: April 9, 2025

JULIEN XAVIER NEALS
United States District Judge